Mark J. GIUSTO

v.

**ASHLAND CHEMICAL COMPANY;**
Drew Industrial Division;  and
Lovella Hebert.

Civil Action No. 97–5041.

United States District Court,
E.D. Pennsylvania.

Jan. 27, 1998.

Joseph F. Bouvier, Eugene Mattioni, Mattioni, Mattioni & Mattioni, Ltd., Philadelphia, PA, for Plaintiff.

Lawrence B. Fine, John A. Adams, Morgan, Lewis & Bockius, Philadelphia, PA, for Defendants.

## MEMORANDUM

DuBOIS, District Judge.

Defendant Lovella Hebert ("Ms. Hebert" or "defendant Hebert") moves for dismissal of Count III of plaintiff's Complaint on three grounds: 1) pursuant to Federal Rule of Civil Procedure 12(b)(2), because this Court lacks personal jurisdiction over Ms. Hebert; 2) pursuant to Federal Rule of Civil Procedure 12(b)(6), because the alleged defamatory statements were absolutely privileged under a judicial privilege or conditionally privileged as a communication between employer and employee; and alternatively, 3) pursuant to Federal Rule of Civil Procedure 12(b)(6), because the defamation claim is barred by Pennsylvania's statute of limitations.

### I. Background

This case arises out of plaintiff's termination, on October 11, 1995, from his position at defendant Ashland Chemical Company ("Ashland"). At the time of the events described in the Complaint, plaintiff and defendant Hebert were both employed by defendant Ashland; plaintiff was Ashland's sales District Manager for a region encompassing Maryland, Virginia, Delaware, Southern New Jersey, and Southeastern Pennsylvania and Ms. Hebert worked as a secretary in Ashland's Virginia office which had oversight responsibilities for that region. Plaintiff currently resides in Pennsylvania.

Plaintiff's Complaint—originally filed in the Court of Common Pleas of Philadelphia County on July 14, 1997 and removed by defendant Ashland to this Court on August 6, 1997—names Lovella Hebert and Ashland Chemical Company as defendants and alleges that his termination was a result of age discrimination; he thus asserts claims under Pennsylvania's Human Relations Act, 43 Pa. S.A. § 951, *et seq.* (Count I) and under the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* (Count II).

In Count III of his Complaint, Plaintiff alleges that he was defamed by defendant Hebert when she lied by stating, "among other things," that:

she became aware of plaintiff's practice of billing personal phone calls to the company; that plaintiff extended a customer sailing outing ... for three extra days of personal use, charging the company for the extra rental; that ... plaintiff charged [another] sailing trip to the company when there were only two company customers present, contrary to the list of customers turned in by plaintiff; that ... she repeatedly asked plaintiff to respond to requests for help from a major customer when it experienced a spill at its facility, but that plaintiff would not respond to the requests; that plaintiff would take personal time away from the office but would do this on office time ...; and that plaintiff improperly submitted expense reports stating that he had lunch with defendant on dates she claims she was not with him.

Plaintiff's Complaint, ¶ 48. These statements were allegedly first made to representatives of Ashland "who used such statements as a basis for firing plaintiff." *Id.* at ¶ 50. The statements were then "republished" to the PHRC, see *id.* at ¶ 51, in the form of an affidavit sworn by Ms. Hebert and captioned to the "Commonwealth of Pennsylvania Governor's Office Pennsylvania Human Relations Commission." *See* Affidavit of Lovella Hebert, dated May 20, 1996, attached as Exhibit B to plaintiff's Response to Defendant Lovella Hebert's Rule 12(b)(6) Motion to Dismiss.

By his own affidavit, submitted in response to defendant Hebert's Motion to Dismiss, plaintiff avers that approximately 25–30% of defendant Hebert's "activities as a secretary in the Virginia Beach[, Virginia] office concerned Pennsylvania customers." Affidavit of Mark Giusto, dated November 13, 1997, ¶ 4. These activities included telephone contacts with Pennsylvania customers and weekly telephone conversations with a secretary based in Ashland's Pittsburgh office. In addition, plaintiff claims that Ms. Hebert's affidavit, submitted to the PHRC, mentioned various Pennsylvania-based activities and further demonstrated her Pennsylvania contacts. *Id.* at ¶ 5. In her Motion to Dismiss, Ms. Hebert asserts that the affidavit sworn to by her and eventually submitted to the PHRC was prepared by her at the request of

Ashland and then "submitted to Ashland." Affidavit of Lovella Hebert, dated October 21, 1997 at ¶ 9.

## II. Personal Jurisdiction

■ Normally, "[w]here a court is asked to rule on a combination of Rule 12 defenses, it should pass on the jurisdictional issues first." *Friedman v. Israel Labour Party,* 957 F.Supp. 701, 706 (E.D.Pa.1997) (citing 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* Civil 2d § 1351, 243–44 (1987)). The Court will, therefore, examine defendant's Rule 12(b)(2) motion first.

### 1. Standard

■ Under Federal Rule of Civil Procedure 4(e) a federal court may exercise personal jurisdiction to the same extent allowed by the state in which the court sits. Pennsylvania law provides for the exercise of personal jurisdiction to "the fullest extent allowed under the Constitution of the United States and [it] may be based on the most minimum contacts allowed under the Constitution of the United States." 42 Pa.C.S.A. § 5322(b) (West 1981). "Thus, the reach of the Pennsylvania statute is coextensive with the due process clause of the United States Constitution." *Time Share Vacation Club v. Atlantic Resorts, Ltd.,* 735 F.2d 61, 63 (3d Cir.1984).

■ In this circuit, a plaintiff may not rest upon the bare allegations of his or her pleadings in defending against a motion to dismiss brought pursuant to Rule 12(b)(2). "Once the defense has been raised, then the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence.... [P]laintiff must respond with actual proofs, not mere allegations." *Id.* at 67 n. 9.[1] There are two ways in which a federal court may obtain personal jurisdiction over a defendant consistent with due process: a plaintiff can

demonstrate that the court has either general or specific jurisdiction over the defendant.

Plaintiff asserts that this Court may exercise either general or specific jurisdiction over defendant Hebert. The Court examines these contentions below in turn.

### 2. General Jurisdiction

■ General jurisdiction is established when it is shown that the defendant has engaged in "systematic and continuous" contacts with the forum. *See, e.g., Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 416, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). Even where there are such "systematic and continuous" contacts, however, due process requires that the exercise of jurisdiction be "reasonable." *See, e.g., Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

■ Plaintiff argues that because 25–30% of defendant Hebert's work while in Virginia involved contact with or was related to Pennsylvania customers, she had systematic and continuous contacts with the state sufficient to establish general jurisdiction. Defendants counter that Ms. Hebert lacks the necessary contacts "as an individual." Although not expanded upon, this appears to be a reference to what is sometimes called the "fiduciary shield" doctrine. "Under this doctrine, jurisdiction over individual officers and employees of a corporation may not be predicated on the court's jurisdiction over the corporation itself, unless the individuals are engaged in activities within their jurisdiction that would subject them to the coverage of the state's long-arm statute." 4 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* Civil.2d § 1069, 370–72 (1987).

The facts clearly establish that Ashland has purposefully availed itself "of the privilege of conducting activities within the forum state," *Kulko v. Superior Court of California,* 436 U.S. 84, 94, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978) (quoting *Hanson v.*

---

1. Plaintiff has submitted exhibits with his Response to Defendant Lovella Hebert's Rule 12(b)(6) Motion To Dismiss. The Court will consider these attachments with respect to defendant Hebert's Motion pursuant to Rule 12(b)(2); it will consider only the factual allegations contained in plaintiff's Complaint, and not those facts adduced through attachments to the Motion papers, in ruling on defendant's Rule 12(b)(6) Motion.

*Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)), and maintained systematic and continuous contacts, thus subjecting the corporation itself to this Court's jurisdiction. However, the Court need not address the question of whether Ms. Hebert's contacts as a secretary for Ashland subject her to this Court's general jurisdiction, because, as explained below, it is clear that her actions subject her to the Court's specific jurisdiction.[2]

### 3. Specific Jurisdiction

■ "The Due Process clause of the Fourteenth Amendment to the United States Constitution permits personal jurisdiction over a defendant in any State in which the defendant has 'certain minimal contacts ... such that maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940).'" *Calder v. Jones,* 465 U.S. 783, 787, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). The focus of an inquiry into whether a court's exercise of in personam jurisdiction is proper, is "the relationship among the defendant, the forum and the litigation." *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977).[3]

■ In *Calder,* the Supreme Court held that defendants' contacts with the forum state in that case—California—through their work as reporters and editors for a newspaper based in Florida were sufficient to subject them, as individuals, to the personal jurisdiction of the forum state's courts where they were "primary participants in an alleged wrongdoing intentionally directed at a California resident ...." *Calder,* 465 U.S. at 790. It is quite clear, therefore, that where a defendant purposefully commits a tort directed at an individual in another forum, even when committed as an agent of a corporation, she can not hide behind the corporate entity in resisting the exercise of personal jurisdiction. *Id.; see also Leshko v. Dorr–Oliver, Inc.,* 86 F.R.D. 343, 345–46 (M.D.Pa.1979) (holding that court could exercise personal jurisdiction over corporate officer—as an individual—who was alleged to have defamed plaintiff, a Pennsylvania citizen, through statements made in Connecticut, because "[h]e certainly could foresee that his action would have definite consequences in the Commonwealth ... [and thus] purposefully availed 'himself of the privilege of conducting activities with the forum state.'" (quoting *Kulko,* 436 U.S. at 94)).

■ In this case, plaintiff has alleged that Ms. Hebert submitted an affidavit containing defamatory statements, either to her employ-

---

**2.** The fiduciary shield doctrine has most often been applied in cases involving corporate disputes, such as breach of contract claims. *See, e.g., TJS Brokerage & Co., Inc. v. Mahoney,* 940 F.Supp. 784, 789 (E.D.Pa.1996); *Forum Publications, Inc. v. P.T. Publishers, Inc.,* 700 F.Supp. 236, 245 (E.D.Pa.1988); *Gross v. Schnepper,* 62 B.R. 323, 327 (E.D.Pa.1986) (citing *Bucks County Playhouse v. Bradshaw,* 577 F.Supp. 1203, 1210 (E.D.Pa.1983)); *Stop–A–Flat Corp. v. Electra Start of Michigan, Inc.,* 507 F.Supp. 647, 651 (E.D.Pa.1981). It has, however, also been applied in this district to cases involving torts. *See, e.g., Michelson v. Exxon Research and Engineering Co.,* 588 F.Supp. 92, 93–94 (W.D.Pa.1984); *Amplifier Research Corp. v. Hart,* 144 B.R. 693, 696 (E.D.Pa.1992); *but see Rototherm Corp. v. Penn Linen & Uniform Service, Inc.,* 1997 WL 419627, *8 (E.D.Pa. July 3, 1997). The reach of the doctrine is questionable, however, particularly in light of *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) (discussed below) in which the Supreme Court rejected an argument "based on the same rationale" under-

lying the fiduciary shield doctrine. *See* Lynne C. Tyler. *Personal Jurisdiction: Is it Time to Stick a Fork in the Fiduciary Shield Doctrine,* 40–APR Res Gestae 9, 11 (1997). The Court need not decide whether this doctrine would prevent the Court from exercising its general jurisdiction, however, because it has concluded that it may exercise specific jurisdiction over defendant Hebert.

**3.** Pennsylvania has adopted a flexible approach to the analysis of personal jurisdiction which takes account of "the myriad of factors that must be considered in the determination of whether sufficient minimum contacts exist." *Kubik v. Letteri,* 532 Pa. 10, 614 A.2d 1110, 1115 (1992). A federal court is not obligated to follow Pennsylvania's interpretation of the scope of constitutional due process, *see, e.g., Simkins Corp. v. Gourmet Resources Int'l, Inc.,* 601 F.Supp. 1336, 1340 (E.D.Pa.1985), but the Commonwealth's flexible approach is consistent with the notion of "fair play" articulated by the Supreme Court in *Burger King,* 471 U.S. at 477–78.

er, who then resubmitted it, or directly to the Pennsylvania Human Relations Commission.[4] In either case, the affidavit ended up in Pennsylvania and it is clear on the face of the affidavit, which was signed by Ms. Hebert and is her sworn statement, that it was directed to an agency in Pennsylvania. Ms. Hebert must, therefore, have been aware that the affidavit would end up in Pennsylvania and that its effects could be felt in Pennsylvania. The question, then, is whether Ms. Hebert's contacts were sufficient so that she "should reasonably anticipate being hailed into court" here. *Worldwide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 287 (1990).

Assuming, as the Court must for purposes of this decision, that defendant Hebert did, as alleged, make defamatory statements in the affidavit submitted to the PHRC, and recognizing that she was aware that the affidavit would end up in Pennsylvania, it would not be unfair for her to expect to be hailed into court in Pennsylvania. Even a single contact can be sufficient to establish the minimum necessary to satisfy due process, "provided that the principle of 'fair play and substantial justice' is observed." *Zeneca Ltd. v. Mylan Pharmaceuticals, Inc.*, 968 F.Supp. 268, 273 (W.D.Pa. 1997) (citing *Nichols v. G.D. Searle & Co.*, 783 F.Supp. 233, 236 (D.Md.1992)); *see also Burger King Corp.*, 471 U.S. at 477–78; *Grand Entertainment Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 481 (3d Cir.1993); *Dion v. Kiev*, 566 F.Supp. 1387, 1390 (E.D.Pa.1983). Moreover, defamation and libel may be unique in that the act can be done in one place, but the effects may foreseeably be felt in some distant location. *See, e.g., Wright v. Xerox Corp.*, 882 F.Supp. 399, 406 (D.N.J.1995) ("It is the essence of defamation that the tortious act is not direct-

ed at the listener, but at the subject of the defamation. Presumably the victim will not be a party to the conversation at issue, and may be anywhere, in any forum. The tortfeasor can foresee that the harm of his wrongdoing may be felt in the forum where his victim resides and enjoys his reputation."); *Abyaneh v. Merchants Bank, North*, 667 F.Supp. 198, 203 (M.D.Pa.1986) ("The torts of libel and defamation are unique torts which courts have consistently held to have occurred simultaneously in the locales of transmission and receipt.").

For the foregoing reasons, the Court concludes that it has personal jurisdiction over defendant Hebert for the statements made in her Affidavit. Having established its jurisdiction over her person, the Court may also hear claims relating to the allegedly defamatory statements made to her employer. The Court will therefore turn to defendant Hebert's remaining contentions.

## III. Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)

### 1. Standard of Review

When considering a Motion under Federal Rule of Civil Procedure 12(b)(6), "the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case and exhibits attached to the complaint may also be taken into account." 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure*, Civil 2d § 1357 (1990); *see also Chester County Intermediate Unit v. Pennsylvania Blue Shield*, 896 F.2d 808, 812 (3rd Cir.1990). Generally, the court must accept as true the facts alleged in the complaint and must draw all reasonable in-

---

4. There is some disagreement among the plaintiff's submissions as to whether defendant Hebert submitted the affidavit at issue directly to the PHRC or whether she submitted it to her employer, Ashland. In his pleadings, plaintiff states that "Hebert provided the ... false information to representatives of defendant Ashland [who then] ... republished the false statements in written form." Complaint, ¶ 50–51. In his affidavit, plaintiff avers that Hebert "submitted an affidavit to the Pennsylvania Human Relations Commission ...." Affidavit of Mark Giusto, dated November 13, 1997, ¶ 5. In his Memorandum,

plaintiff states that Hebert supplied "an affidavit to the employer to submit to the PHRC," Plaintiff's Memorandum of Law in Opposition to Defendant Lovella Hebert's Rule 12(b)(6) Motion to Dismiss, at 6, and that she "purposefully submitted an affidavit to be used in the PHRC proceedings ...." *Id.* at 5. Whether defendant Hebert submitted the affidavit to the employer first or not has no bearing on the analysis of personal jurisdiction, however, for, as *explained below*, Hebert must have been aware that the affidavit would end up in Pennsylvania.

ferences from those facts in the light most favorable to the plaintiff. *See, e.g., Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3rd Cir.1990).

## 2. Privilege

Plaintiff alleges in his Complaint that defendant Hebert defamed him on two different occasions. The first involved statements made by Ms. Hebert to her employer while she worked in Virginia; the second occurred when the affidavit which contained the allegedly defamatory statements was submitted to the PHRC. Ms. Hebert argues that both occasions are privileged. The Court examines each occasion in turn.

### a. Statements by Ms. Hebert to Ashland

■ In Pennsylvania, a conditional privilege "applies to private communications among employers regarding discharge and discipline." *Daywalt v. Montgomery Hospital*, 393 Pa.Super. 118, 573 A.2d 1116, 1118 (1990) (holding that supervisor's communication to a personnel director of her suspicions concerning the plaintiff's alteration of her time card was conditionally privileged). "A publication is conditionally privileged if the publisher reasonably believes that the recipient shares a common interest in the subject matter and is entitled to know." *Id.; see also Miketic v. Baron*, 450 Pa.Super. 91, 675 A.2d 324, 329–30 (1996) (holding same).

■ The Court concludes that defendant Hebert's communications to her employer while working in Virginia were conditionally privileged because they involved workplace communications regarding a subject matter of common interest.[5] However, conditional privileges are subject to abuse and although the question whether a privilege applies is a matter of law, the question whether a privilege has been abused is one of

fact. *See Agriss v. Roadway Exp., Inc.*, 334 Pa.Super. 295, 483 A.2d 456, 463 (1984) (citations omitted). A conditional privilege can be abused when publication:

> (1) is actuated by malice or negligence; (2) is made for a purpose other than that for which the privilege is given; (3) is made to a person not reasonably believed to be necessary for the accomplishment of the purpose of the privilege; or (4) includes defamatory matter not reasonably believed to be necessary for the accomplishment of the purpose.

*Elia v. Erie Insurance Exchange*, 430 Pa.Super. 384, 634 A.2d 657, 661 (1993) (footnote and citations omitted).

Plaintiff in this case alleges that Ms. Hebert made her statements with "malicious intent . . . ." Complaint, ¶ 50. At this stage in the proceeding, the Court must accept as true the allegations in the Complaint. The question of whether the conditional privilege has been abused is, therefore, one of fact and the Court will not dismiss Count III on a Rule 12(b)(6) motion.

### b. Statements Contained in the Affidavit Submitted to the PHRC

■ Defendant Hebert additionally contends that her affidavit submitted to the PHRC is covered by an absolute judicial privilege. The Court agrees. "The judicial privilege applies so long as statements are made in the regular course of judicial or quasi-judicial proceedings and are pertinent and material to such litigation." *Giusto v. Ashland Chemical Co.*, C.A. No. 97–5041, 2 (E.D.Pa. Sept. 24, 1997) (citing *Post v. Mendel*, 510 Pa. 213, 507 A.2d 351, 355 (1986)). In this case, Ms. Hebert's affidavit was submitted to the PHRC in a quasi-judicial proceeding commenced by plaintiff. The judicial privilege therefore applies to

---

5. Although it is true that Hebert was not a supervisor or superior of plaintiff at Ashland and that the defendants in *Daywalt* and the cases cited therein were superiors or supervisors of the plaintiffs in those cases. Hebert did process plaintiff's submissions of expense reports and she also did have an interest in common with her employer, namely, to ensure that no fraud was committed against Ashland. Finding that a conditional privilege exists in the circumstances of this case therefore comports with the holding of

*Daywalt*—that an employer must be free to exchange information about an employee's job performance—and with the Restatement (2d) of Torts § 596—cited with approval in *Daywalt*, 573 A.2d at 1118—which states that: "An occasion makes a publication conditionally privileged if the circumstances lead any one of several persons having a common interest in a particular subject matter correctly or reasonably to believe that there is information that another sharing the common interest is entitled to know."

the statements in that affidavit and that privilege is normally absolute; that is, it cannot be destroyed by abuse. *See, e.g., Binder v. Triangle Publications, Inc.,* 442 Pa. 319, 275 A.2d 53, 56 (1971). The only form of abuse which may defeat the judicial privilege is over-publication, *see Johnson v. Resources for Human Development, Inc.,* 860 F.Supp. 218, 223 (E.D.Pa.1994), but such over-publications is neither alleged nor argued by plaintiff. Plaintiff may not, therefore, rely on defendant Hebert's affidavit and defendant's Motion will be granted with respect to the allegedly defamatory statements contained in defendant Hebert's affidavit.[6]

### 3. Statute of Limitations

■ Defendant Hebert's final argument is that plaintiff did not file his Complaint within the time allowed by Pennsylvania's statute of limitations. The statute of limitations for defamation actions in Pennsylvania is one year, 42 Pa.C.S.A. § 5523(1), but Pennsylvania employs a "discovery rule" in such actions: the statute of limitations does not, therefore, begin to run until "the plaintiff has discovered his injury or, in the exercise of reasonable diligence, should have discovered his injury." *DiNicola v. DiPaolo,* 945 F.Supp. 848, 861 (W.D.Pa.1996) (citation omitted).

■ In ruling on a motion to dismiss on statute of limitations grounds, the Court may not look beyond the face of the complaint. Thus, "a 12(b)(6) motion should not be granted on limitations grounds unless the complaint facially shows noncompliance with the limitations period." *Clark v. Sears Roebuck & Co.,* 816 F.Supp. 1064, 1067 (E.D.Pa.1993) (citing *Morgan v. Kobrin Securities, Inc.,* 649 F.Supp. 1023, 1027–1028 (N.D.Ill.1986)); *see also Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1385 n. 1 (3d Cir.1994) ("While the language of Fed. R.Civ.P. 8(c) indicates that a statute of limitations defense cannot be used in the context of a Rule 12(b)(6) motion to dismiss, an exception is made where the complaint facially

shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading." (citation omitted)); *Davis v. Grusemeyer,* 996 F.2d 617, 623 n. 10 (3d Cir.1993) ("We are mindful that the applicability of the statute of limitations usually implicates factual questions as to when plaintiff discovered or should have discovered the elements of the cause of action; accordingly, 'defendants bear a heavy burden in seeking to establish as a matter of law that the challenged claims are barred.'" (quoting *Van Buskirk v. Carey Canadian Mines, Ltd.,* 760 F.2d 481, 498 (3d Cir. 1985))).

In the case at bar, because the Court has held that Ms. Hebert's affidavit submitted to the PHRC is absolutely privileged, the only statements at issue are those made by Ms. Hebert to her employer while working in Virginia. The Complaint does not contain facts sufficient for the Court to determine—at this stage of the proceedings—when plaintiff became aware, or reasonably should have become aware, of defendant Hebert's statements. Although plaintiff alleges that the defamatory statements made by Ms. Hebert to Ashland were the same ones recited in her affidavit, and although he alleges the date the affidavit was signed, it is not clear from the face of the complaint when plaintiff became aware, or should have become aware, of the statements at issue. Accordingly, the Court will not grant defendant Hebert's Motion to Dismiss on the ground that the suit is barred by the statute of limitations.

### IV. Conclusion

*For the reasons stated above, the Court will grant defendant Hebert's Motion to Dismiss in part, and will deny her Motion in part. The Motion will be granted only as to that part of Count III in which plaintiff alleges defamation based on the Affidavit sworn to by defendant Hebert and submitted to the PHRC. The Motion will be denied as to the remaining statements alleged to be defamatory.*

An appropriate order follows.

6. This dismissal will be without prejudice to plaintiff's right to file and serve an amended complaint alleging over-publication if he reasonably believes that that exception applies in this case.

## ORDER

**AND NOW**, to wit, this 27th day of January, 1998, upon consideration of the Motion of Defendant Lovella Hebert to Dismiss Count III of Plaintiff's Complaint, (Document No. 15, filed October 22, 1997), Plaintiff's Response to Defendant Lovella Hebert's Rule 12(b)(6) Motion to Dismiss, (Document No. 16, filed November 7, 1997), and Defendant's Reply to Plaintiff's Memorandum of Law Opposing Defendant's Motion to Dismiss Count Three, (Document No. 18, filed November 17, 1997), for the reasons stated in the attached Memorandum, **IT IS ORDERED** as follows:

1. Defendant Hebert's Motion to Dismiss Count III is **GRANTED** as to the statements contained in the Affidavit of Lovella Hebert, dated may 20, 1996 which was submitted to the Pennsylvania Human Relations Commission ("PHRC"), **WITHOUT PREJUDICE** to plaintiff's right to file, and serve, within ten (10) days, an Amended Complaint alleging over-publication if plaintiff reasonably believes the over-publication exception to the absolute privilege applies in this case.

2. Defendant Hebert's Motion to Dismiss is **DENIED** in all other respects.

**BY THE COURT**